THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* DEROYSE TURNER, a/k/a Deroise Turner, Defendant-Appellee.

First District (2nd Division)    No. 80-1087

Opinion filed March 30, 1982.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Adrienne Noble Nacev, Assistant State's Attorneys, of counsel), for the People.

No brief filed for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant, charged with one count of rape and one count of deviate sexual assault, was tried before a jury. During the State's closing argument on rebuttal, the trial judge *sua sponte* declared a mistrial and thereafter dismissed the charges and discharged the defendant. The State appeals pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)(1)). The sole issue raised on appeal is whether the mistrial bars defendant's reprosecution on double jeopardy grounds. We reverse and remand.

The complaining witness, her husband, the arresting officers, the investigating officers and an assistant state's attorney testified for the State. According to the alleged victim (victim) she was on her sister's porch at 8 p.m. on July 13, 1978, with defendant, her sister, two friends, her nephew and two nieces. Everyone was drinking except the victim, who was on medication. Defendant offered to take the victim to the store to buy soft drinks and cigarettes, and she agreed. On the way, she assented to viewing a bar defendant was building in a basement apartment on South Homan Avenue. Once there, defendant asked the victim to have sex with him. She declined; he offered her money and tried to force money into her hands. She threw it on the table. She tried to leave, and defendant pushed her back, hit her below her eye, knocked her down, choked her, pulled her clothes off and forced her to perform vaginal and oral intercourse with him, without her consent and after she fought him. Defendant fell asleep, and she left the basement for her home, told her husband of the rape and called the police.

The police testified they found defendant asleep in the basement apartment, where they arrested him. At the 10th district police station, defendant agreed to relate to the police what had happened. According to testimony of a police investigator and the assistant State's Attorney to whom he repeated his story, defendant stated he offered the victim $20 to have sex with him and she agreed. She had consumed two pints of whiskey while she was in the basement apartment. Defendant also said, "I'm a man. She's a woman. That's what women are for." Following this testimony, defense counsel moved for a mistrial on the ground that the defense was not informed of this statement on discovery. The trial court reversed its ruling until the close of the State's case, but no such ruling was in fact made.

Defendant testified on his own behalf that on the night in question he joined the victim and several other people on a porch at 8:45 p.m. She was drinking and smoking marijuana. He talked with her for 1½ hours, gave her $5 to purchase drinks and gave another man $5 for marijuana at her suggestion. She asked defendant for more liquor, and he told her he would give her liquor in the recreation room at a S. Homan address as

well as $20 if she would have sexual intercourse with him. Her sister agreed to watch her children, and they left for the basement on Homan. She did not ask defendant to take her to the store. After drinking for 1½ hours at the apartment, defendant gave the victim $20 which she accepted, and defendant had sexual intercourse and oral sex with her without objection and without force. He denied he struck or pushed her; however, he stated she fell and hurt her hip at the apartment. After defendant testified, the defense rested.

The assistant State's Attorney indicated that the State anticipated calling in rebuttal an individual who was on the porch on the evening in question, who would testify that he did not see the victim drinking and that she had said she was going to the store to buy "pop." The court ruled that the proposed testimony was not proper rebuttal since it went to the issue of the consent defense which had been raised in the opening statement and was known to the prosecutor in advance, and did not allow the introduction of the testimony. The State thereafter rested.

During closing argument, defense counsel stated:

"Let's start with the discussion on the porch. Who was on the porch when * * * [defendant] and * * * [the victim] were on the porch? [Her] * * * sister, * * * [a friend] and [her] * * * two nieces and nephews.

\* \* \*

Where is her sister, where are her nieces and nephews?

\* \* \*

Where * * * are these people; why weren't they on the [w]itness stand to corroborate her testimony?"

The court overruled the State's objection that the argument was improper because the witnesses were equally available to both sides and because the argument was not supported by the record. Defense counsel continued to argue, in part:

"First, where are the witnesses that were on the porch?

\* \* \*

State witnesses did not corroborate her testimony. They weren't there during conversations with her. Other people were but they did not testify in this case, * * *."

During the State's rebuttal the following occurred:

"[Assistant State's Attorney]: [Defense counsel] has taken a position about the State's case stating we didn't produce any witness who was on that porch aside from * * * [the victim]. Yesterday in Court there was a man named Ricky Childress in Court all day waiting to testify and was prevented from testifying.

[Defense Counsel]: Oh, your Honor—

[The Court]: The Court will declare a mistrial.

[Defense Counsel]: Thank you, Judge. I'd ask that a rule be—
[The Court]: That is for a later point in time."

The trial court then excused the jury. Defense counsel moved for a mistrial, and the court granted the motion. Defense counsel then made a motion requesting the court to discharge defendant on the ground that jeopardy had attached because the mistrial was based on prosecutorial misconduct. The trial court dismissed the charges, and discharged defendant on double jeopardy grounds. This appeal followed.

■■ Defendant has not filed an appellee's brief. Nevertheless, this court elects to consider the merits of the State's appeal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493; *People v. Fraser* (1978), 62 Ill. App. 3d 142, 379 N.E.2d 10; *People v. Nolan* (1978), 59 Ill. App. 3d 177, 375 N.E.2d 445.

■■ The State argues that the trial court's declaration of a mistrial should not be a bar to reprosecution of defendant because (1) the prosecutor did not engage in "overreaching" and (2) defendant consented to the mistrial.

Retrial of a case is not barred, provided, in the scrupulous exercise of discretion, the trial court properly found a "manifest necessity" for the mistrial. (*United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547; *People v. Pendleton* (1979), 75 Ill. App. 3d 580, 394 N.E.2d 496.) Manifest necessity exists where, "due to circumstances beyond the control of the parties and the court, it becomes no longer possible to conduct the trial, or * * * to reach a fair result based upon the evidence." (*People v. Pendleton* (1979), 75 Ill. App. 3d 580, 591-92.) Manifest necessity has been found where prosecutorial or judicial error has been committed, as where the government makes improper remarks, engages in improper questioning, or refers to another case pending against defendant. Where manifest necessity or defendant's motion for retrial is attributable not to error, but to prosecutorial or judicial "overreaching," retrial is forbidden. "Overreaching" is defined as misconduct designed to provoke a mistrial to secure a more favorable opportunity to convict the defendant in a later trial, or motivated by bad faith or undertaken to harass the defendant. *People v. Pendleton* (1979), 75 Ill. App. 3d 580, 593. See also *United States v. Dinitz* (1976), 424 U.S. 600, 47 L. Ed. 2d 267, 96 S. Ct. 1075; *People v. Estrada* (1980), 91 Ill. App. 3d 228, 236, 414 N.E.2d 512, *cert. denied* (1981), 83 Ill. 2d 571.

The trial court in the instant case filed a memorandum of opinion setting forth its reasons for granting the mistrial, which is indicative of the scrupulous exercise of discretion on its part. The conduct which led to the mistrial was the prosecutor's rebuttal statement, arguably made in response to defendant's closing argument. See *People v. Vriner* (1978), 74 Ill. 2d 329, 344, 385 N.E.2d 671, 677, and *People v. Izzo* (1958), 14 Ill. 2d

203, 214, 151 N.E.2d 329, which upheld otherwise improper prosecutorial argument as invited by the defendant.

It appears that the defense first alluded to alleged witnesses named by the victim, but later simply referred to "witnesses who were on the porch." The prosecutor clearly erred in asserting that he had a witness ready to testify but was prevented from doing so; however, that argument did not rise to the level of "overreaching" for several reasons. First, it is evident that the prosecutor was fully prepared to defend his argument with legal authorities. Second, there was no basis upon which to consider his comment as a deliberate attempt to secure a mistrial. The State's case was not going so poorly as to encourage the prosecutor to attempt to secure a new trial: although the State's rebuttal witness was not allowed to testify, the victim's testimony was corroborated by testimony of police officers and the assistant state's attorney to the effect that a $20 bill was found on the table of the basement apartment where the incident occurred; she had bruises on her face and body where she stated defendant had struck her; and there was no evidence that she had been drinking.

Consideration of the above-described conduct of the prosecutor in the instant case, and that of the prosecutors in *People v. Pendleton*, and *People v. Gomez* (1980), 84 Ill. App. 3d 785, 406 N.E.2d 886, serves to illustrate what is meant by "overreaching." In *Pendleton*, the court found the prosecutor had engaged in overreaching where he had coached a witness during a trial recess while she was in the midst of testifying, where the trial had been going badly for the State. The court held such conduct was motivated by bad faith, in that it resulted from a fear that defendant would be acquitted based upon the witness' initial testimony. In *Gomez*, reprosecution was not barred on double jeopardy grounds by the prosecutor's overemphasis of defendant's post-arrest silence, where there was no evidence the prosecutor had acted in bad faith with intent to provoke a mistrial to avoid acquittal in order to reprosecute the defendant.

From the foregoing, it appears that the declaration of a mistrial was correct. The trial court's ruling dismissing the charges and discharging defendant, however, was erroneous and must be reversed and remanded for a new trial. In view of our disposition of this issue, we need not consider the issue of defendant's consent to the mistrial.

Reversed and remanded.

STAMOS, P. J., and PERLIN, J., concur.