A95A1549. BAILEY v. THE STATE.
(465 SE2d 284)

ANDREWS, Judge.

This case is before us on appeal from the trial court's denial of David Bailey's motion to dismiss and plea of former jeopardy. The sole question presented is whether there was a "manifest necessity" for the trial court's sua sponte declaration of a mistrial. We hold there was.

On August 10, 1992, shortly after midnight, a state patrolman stopped Bailey after he noticed Bailey's truck weaving back and forth and crossing over the centerline of the highway. The officer testified he could smell alcohol when Bailey stepped out of the truck and Bailey appeared flushed and unsteady on his feet. The officer informed Bailey he was going to take him in for a blood alcohol test and read

Bailey the Implied Consent Warning. Bailey agreed to submit to the test. The results of the Intoximeter 3000 test showed Bailey's blood alcohol level to be .18 grams percent.

Initially, Bailey was charged with driving with an alcohol concentration of .10 grams or more under OCGA § 40-6-391 (a) (4). Prior to trial, the court allowed an amendment to the accusation to add a charge under OCGA § 40-6-391 (a) (1), driving under the influence to the extent that it was less safe for him to do so.

On August 11, 1994, the case came on for a bench trial and Bailey objected to the admission of the evidence of the blood alcohol test results. Bailey contended that the results of the Intoximeter test were inadmissible since the implied consent warning was so vague that he was not aware that he could request an independent test administered by someone of his own choosing. The court reserved ruling on the admissibility of the test results until the close of the evidence and requested both sides to submit briefs on the issue.

On November 15, 1994, the trial judge entered an order ruling the results of the blood alcohol test inadmissible since Bailey had not been informed specifically that he could have an independent blood alcohol test performed by a person of his own choosing. In that same order, the trial court went on to state: "However, the Court, sitting as the trier of fact, has both heard and seen the results which the Court has excluded. The Court is unable to remove such results from its consideration of this case. For such reasons the court hereby grants Defendant's Motion In Limine seeking to exclude results of the State administered chemical test. The Court further grants Defendant a Mistrial and assigns this case for trial by jury, where the State is hereby barred from introducing any evidence concerning the State administered blood alcohol test."

Bailey filed a motion to dismiss and plea of former jeopardy, pointing out that he had neither moved for, nor consented to, a mistrial and the court's order assigning the case to a jury was placing him in double jeopardy. The State responded to this motion by agreeing that Bailey was being placed in double jeopardy and moved for an order setting aside the order granting a mistrial. The State requested that the trial court enter a judgment based on the admissible evidence adduced at trial.

On February 14, 1995, the trial court denied Bailey's motion to dismiss as follows: "as explained in this Court's order dated November 15, 1994, the Court granted a mistrial because it would have been impossible to proceed with the trial without causing manifest injustice to the Defendant. For such reason, and pursuant to OCGA § 16-1-8 (e) (2) (B), Defendant's Motion is hereby Denied." Bailey now appeals this denial of his motion and plea in bar, contending there was no manifest necessity for declaring a mistrial and, therefore, the

judge erred in ordering a mistrial without his consent.

The Georgia Constitution guarantees that no one shall be put in jeopardy more than once for the same offense except when a new trial is granted after a conviction or when a mistrial is declared. Constitution of the State of Georgia of 1983, Art. I, Sec. I, Par. XVIII. In a bench trial, a person is placed in jeopardy after the first witness is sworn and before findings are made by the trier of fact. OCGA § 16-1-8 (a) (2). Therefore, there is no question that jeopardy attached in this case and the inquiry becomes whether or not the declaration of a mistrial was improper.

The court's order of February 14, 1995 denying Bailey's motion to dismiss and plea of former jeopardy gives two reasons for declaring the mistrial. First, the explanation given in the November 15, 1994 order, i.e., that it could not remove the test results from its consideration, and second, OCGA § 16-1-8 (e) (2) (B), which provides that termination of the trial is not improper if the trial court finds that termination is necessary due to prejudicial conduct in or out of the courtroom which makes it impossible to proceed with the trial without injustice to the defendant.

The trial court's citing of the Code section on "prejudicial conduct" is confusing because the order does not explain what it means by the term and both the State and the defendant contend that there has never been any prejudicial conduct in connection with this case. Therefore, the only clear reason given by the court for declaring a mistrial is the court's inability to remove the results of the blood alcohol test from its consideration of the case.

"If a mistrial is declared without a defendant's consent or over his objection, the defendant may be retried only if there was a 'manifest necessity' for the mistrial." *Smith v. State*, 263 Ga. 782, 783 (439 SE2d 483) (1994). The doctrine of manifest necessity requires the trial judge not to foreclose the defendant's option to have his trial completed in a particular tribunal "until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Foody v. State*, 205 Ga. App. 666, 667 (423 SE2d 423) (1992) (quoting *United States v. Dinitz*, 424 U. S. 600, 606-607 (II) (96 SC 1075, 47 LE2d 267) (1976). "Because of the severe consequences of ordering a mistrial without the [defendant's] consent, a trial court should give careful, deliberate, and studious consideration to whether the circumstances demand a mistrial, with a keen eye toward other, less drastic alternatives." *Stevens v. State*, 215 Ga. App. 718, 719 (452 SE2d 176) (1994).

In determining whether the trial judge's inability to disregard the inadmissible evidence rises to the level of "manifest necessity" for declaring a mistrial, the court notes at the outset that it is well estab-

lished that the trier of fact, whether it be judge or jury, is required to consider only admissible evidence and must be able to disregard evidence found to be inadmissible. Indeed, when the judge sits as the trier of fact, it is presumed that he will consider only legally admissible evidence. *Daniels v. State*, 211 Ga. App. 23, 25 (438 SE2d 99) (1993).

It is highly unusual for a judge to declare that he is unable to disregard inadmissible evidence. However, it may be that there are instances where evidence is so prejudicial that it will influence the judge's decision in spite of the fact that it is not legally admissible.

The Supreme Court has held that discovery of juror bias during trial warrants the declaration of a mistrial. *Downum v. United States*, 372 U. S. 734, 736 (83 SC 1033, 10 LE2d 100) (1963). Further, in a case similar to this one, a Pennsylvania court found that when the trial judge sitting as factfinder recognizes that he has a bias and rules a mistrial, this clearly constitutes a manifest necessity such that a retrial would not violate a defendant's double jeopardy rights. *Commonwealth v. Smith*, 467 A2d 888, 891 (Pa. 1983).

We agree that where the reason for declaring a mistrial is bias on the part of the factfinder, the trial court's decision to declare a mistrial is entitled to the highest deference. See *Wilson v. State*, 217 Ga. App. 544, 545 (458 SE2d 486) (1995). Although we have held that the trial court must consider less drastic alternatives prior to declaring a mistrial, there appear to be no alternatives for the trial judge to consider in this situation. *Wilson*, supra at 545-546. Therefore, we find that, in this instance, the trial judge's inability to disregard evidence he ruled inadmissible constitutes a manifest necessity for a mistrial. Accordingly, Bailey's double jeopardy rights will not be violated by a retrial to a jury.

*Judgment affirmed. Beasley, C. J., McMurray, P. J., Birdsong, P. J., Pope, P. J., and Johnson, J., concur. Blackburn, Smith and Ruffin, JJ., dissent.*

BLACKBURN, Judge, dissenting.

I must respectfully dissent with the judgment reached by the majority. In this case, the defendant did nothing to contribute to any dilemma in which the court found itself. The defendant did not request the mistrial and objected strenuously thereto. I agree with the majority that the only basis available under these facts for declaring a mistrial is a proper finding of "manifest necessity" for doing so.

"The power of a trial court to interrupt the proceedings on its own or the prosecutor's motion by declaring a mistrial is subject to stringent limitations. Retrial is permissible *only if a manifest necessity existed for the declaration of the mistrial.*" (Punctuation omitted.) *Stevens v. State*, 215 Ga. App. 718 (452 SE2d 176) (1994).

Here the trial court heard argument on defendant's objection to the introduction of the breath test results at trial, took same under advisement and proceeded with the trial. Three months after the trial, the judge decided that he had been so affected by the existence of the breath test strip and the testimony related thereto, that he could not ignore same, and declared a mistrial. Whatever the trial court's reaction to the breath test, he was fully aware of such feelings at the time he heard such testimony. The judge did not decide to grant the mistrial until three months after he received the briefs he requested from the parties and had decided defendant's objection had to be sustained.

"Manifest necessity. Doctrine of 'Manifest necessity' which will authorize granting of mistrial in criminal case, and preclude defendant from successfully raising plea of former jeopardy, *contemplates a sudden and overwhelming emergency beyond control of court and unforeseeable, and it does not mean expediency.*" (Citation omitted; emphasis supplied.) Black's Law Dictionary, 5th ed.

The majority's reliance on *Commonwealth v. Smith*, 467 A2d 888 (Pa. 1983) is misplaced. That case dealt with the judge's inability to be objective after he recognized witnesses in the case. A finding of "manifest necessity" for a mistrial in a bench trial setting is appropriate in such circumstances as the defendant does not have the opportunity to "strike" potential members from serving as triers of fact.

The facts of this case do not support a finding that a manifest necessity existed for the declaration of a mistrial pursuant to OCGA § 16-1-8. I would find that the trial court erred in denying defendant's motion to dismiss and plea of former jeopardy.

I am authorized to state that Judge Smith joins in this dissent.

RUFFIN, Judge, dissenting.

I respectfully dissent from the majority's opinion because retrial subjects Bailey to double jeopardy in violation of the Georgia Constitution. Ga. Const., Art. I, Sec. I, Par. XVIII. I believe the trial court abused its discretion in sua sponte declaring a mistrial in excess of three months after the trial's conclusion.

It has long been established that double jeopardy bars retrial following a mistrial contested by a defendant absent a showing of manifest necessity. *Oregon v. Kennedy*, 456 U. S. 667, 672 (102 SC 2083, 72 LE2d 416) (1982). While the concept of manifest necessity admits of no precise definition, it "exists where, due to circumstances beyond control of the parties and court, it becomes no longer possible to conduct the trial, or to reach a fair result based upon the evidence." (Citation and punctuation omitted.) *People v. Turner*, 434 NE2d 428, 431 (Ill. App. Ct. 1982); *Abdi v. Georgia*, 744 F2d 1500 (11th Cir. 1984). In applying this rather nebulous but important concept, courts

have looked to the causes of the mistrial and viewed them on a spectrum. "At one extreme are cases in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence. . . . At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict." *Burleson v. State*, 259 Ga. 498, 500 (384 SE2d 659) (1989) (quoting *Arizona v. Washington*, 434 U. S. 497, 505-509 (98 SC 824, 54 LE2d 717) (1978)). When the facts supporting mistrial are unforeseeable, a finding of manifest necessity is justified. See, e.g., *Commonwealth v. Smith*, 467 A2d 888 (Pa. 1983); Black's Law Dictionary, 963 (6th ed. 1990) (defining manifest necessity as "a sudden and overwhelming emergency beyond control of court and unforeseeable"). In determining whether the trial court properly found manifest necessity for a mistrial, defendants' valued right to have their trials decided by a particular tribunal must be considered. *United States v. Jorn*, 400 U. S. 470, 484 (91 SC 547, 27 LE2d 543) (1971).

The cause of the mistrial was clearly foreseeable in this case. By indulging in the usual practice of deferring a ruling on the motion to suppress until after the bench trial, the court ran the predictable risk of being prejudiced by the evidence presented. The circumstances precipitating the mistrial in this case were not sudden or beyond control of the court.[1] They arise in virtually every bench trial where evidentiary rulings which go to the heart of the case are deferred until all the evidence has been heard, and the court takes under consideration evidence it knows is not admissible. But a judge trained in the law is expected to be able to distinguish between admissible and inadmissible evidence. While the trial court's candor is commendable, this is not a case where the inadmissible evidence is so emotionally charged that no reasonable person could disregard it. If the ability to make this distinction is not required of trial courts as a matter of course, how can we ever expect a jury to follow a trial court's curative instructions to disregard evidence in similar circumstances? In granting the mistrial under these circumstances, the trial court deprived Bailey of his right to the tribunal of his choice and ultimately placed him in jeopardy of his liberty more than once for the same offense. Ga. Const., Art. I, Sec. I, Par. XVIII. By condoning this practice, the majority promotes expedience at justice's expense. Because manifest necessity did not justify the mistrial, I believe double jeopardy bars retrial in this case.

I am authorized to state that Judge Blackburn and Judge Smith

---

[1] This fact distinguishes *Commonwealth v. Smith*, supra, on which the majority relies. In *Smith*, the judge sua sponte directed the withdrawal of the defendant's jury trial waiver after questioning his ability to be fair when he recognized witnesses about to testify. This was an event which took the court by surprise.

join in this dissent.

DECIDED DECEMBER 1, 1995 —

*Starling & Starling, Donald A. Starling*, for appellant.
*Rebecca L. Sims, Solicitor*, for appellee.